GEORGE CAROLI et al., Copartners Doing Business under the Name of CAROL & Co., et al., Plaintiffs, *v.* N. THOMAS SAXL, as Commissioner of Housing and Buildings of the City of New York, et al., Defendants.

Supreme Court, Special Term, New York County, April 23, 1948.

*S. Shirans Hauer* for plaintiffs.

*John P. McGrath, Corporation Counsel (Bernice Rogers* of counsel), for Bernard J. Gillroy, successor to N. Thomas Saxl, as Commissioner of Housing and Buildings, defendant.

*Coleman F. Nichols* for Nassau-Beekman Realty Corporation and another, defendants.

STEUER, J. One of the defendants is the owner of two buildings located at 132 Nassau Street and 15–17 Beekman Street. The buildings are physically connected and operated as a unit. For the purposes of this proceeding they may be deemed as one. The building operates under a certificate of occupancy permitting its use as an office building and it has the general characteristics of such a building. The remaining defendant is the commissioner of housing and buildings. Defendant commissioner on June 11, 1946, served a notice of violation on the owner on the claim that parts of the building were being used for factory purposes contrary to the certificate of occupancy. The owner thereupon made a survey of the building and served the plaintiffs with notice that they would have to vacate the building. This action was brought to restrain the enforcement of the violation notice. The owner has taken the position that

it has no objection to the plaintiffs but that if the commissioner's notice is proper it desires to comply.

A "factory building" is defined by the Labor Law (§ 2, subd. 10). The last sentence is applicable. It reads "The provisions of this chapter shall, so far as prescribed by the rules, also apply to a building, not a factory building, any part of which is occupied or used for a factory, except as otherwise provided by this subdivision."

A factory is defined in the preceding subdivision (§ 2, subd. 9) of the same statute as follows: "'Factory' includes a mill, workshop or other manufacturing establishment * * * where one or more persons are employed at manufacturing, including making, altering, repairing, finishing, bottling, canning, cleaning or laundering any article or thing, in whole or in part * * *. The provisions of this chapter affecting structural changes and alterations shall not apply to factories or to any buildings, * * * where less than six persons are employed at manufacturing * * *."

The authority under which the commissioner issued the violation order is section C26–185.0 of the Administrative Code of the City of New York which reads "Change of Occupancy.— It shall be unlawful to make any changes of occupancy or use of any structure if such change is inconsistent with the last issued certificate of occupancy. It shall be unlawful to make any change of occupancy in a structure, existing on January first, nineteen hundred thirty-eight, which would bring it under some special provision of the laws governing building construction * * *."

It follows that if six persons are employed in manufacturing as defined by the Labor Law the commissioner acted rightfully. The parties are not in accord as to what persons are to be counted in this classification. In this connection the word "employed" means "engaged in," and would apply to an employer or a person working for himself if he engaged in the acts which constituted manufacturing but would not apply to an employee who did clerical or other work separate from the work of manufacturing.

There are in the building five tenants engaged in the business of watch repairing. In the premises of these tenants more than six persons are employed in doing the work. Repairing an article is specifically defined as manufacturing. This is not occasional or incidental, it is the very work that these people do, their occupation and their sole reason for being in business. It is

true that an individual craftsman plying his trade with the aid of delicate hand tools or with machinery less formidable than the usual electric appliances found in the ordinary city apartment is not generally thought of as a manufacturer or as conducting a factory. But that it comes within the definition as given by the statute cannot be denied without doing violence to the language. If a different concept is intended the remedy is by way of amendment and this should not come by interpretation.

It follows that the commissioner was performing his duty in the issuance of the violation order and the case would be disposed of except that the plaintiffs have two further contentions.

First, each tenant asks for a declaratory judgment as to the nature of his occupation. One of the tenants is in the multigraphing business. In this business paper is fed into a machine which superimposes writing on it resembling the work done by a typewriter. I do not find that this activity comes within any definition of manufacturing.

Three tenants are in the business of servicing adding machines and typewriters. A large part of their work is done off the premises but a not inconsiderable portion, consisting of the major repairs is done on the premises. Each of these tenants at times takes in machines, reconditions them and sells them. While only a portion of their work this is certainly repairing and the place where it is done is a workshop in the usual understanding of that term. These tenants are therefore manufacturing.

Two of the tenants are engravers. They receive small metal blocks and cut letters into them by hand. One tenant conducts a sales agency for check-writing machines. When a machine gets out of order it sometimes brings it back to the premises and puts it in order. If the machine is seriously damaged it is sent to the factory. None of these tenants are manufacturers.

One tenant is clearly a manufacturer of electronic equipment.

The remaining tenant is a designer of jewelry. He cuts out his designs in metal with a handsaw and sends them out to be cast. He receives them back and then places and affixes the stones. This is manufacturing.

Lastly it is claimed that if these tenants are evicted a great hardship will be done them in that it is exceedingly difficult for them to find space to operate in. This is undoubtedly true. It is also claimed that many of these tenants have occupied their present quarters for many years without interference from the municipal authorities. And that others similarly engaged occupy buildings of like character with the one involved. The last argu-

ments are of no avail. It is no· defense to the violation of a statute that others are violating it or that the particular violation is of long standing. The main argument is based on a balance of equities. If it were a true balance there would be considerable merit in the contention of the plaintiffs. But it is not. The statutes involved are safety measures — designs for the physical security of these tenants, their neighbors in the building and the public generally. Whether they accomplish that purpose is, as far as the court is concerned, neither here nor there. The Legislature, the body having the determination of these matters, has so declared. To make exception is to say that for the period when space is hard to find the hazards incident to the conduct of business in buildings unsuited for that purpose will be overlooked and the safeguards ignored. The regulations were in large part inspired by catastrophes growing out of improper structures. There is no reason to believe that repetitions will await the end of the emergency.

Judgment accordingly.