THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH D. McGOLDRICK, as State Rent Administrator, Plaintiff, *v.* RUTH E. WADE, Defendant.

Supreme Court, Trial Term, New York County, October 11, 1950.

*Nathaniel L. Goldstein, Attorney-General (Emory Gardiner* of counsel), for plaintiff.

*Hope R. Stevens* for defendant.

HOFSTADTER, J. This action is brought by the People through the State Rent Administrator pursuant to the Residential Rent Control Law (L. 1946, ch. 274, as amd. by L. 1950, ch. 250, referred to as the act) and the regulations issued thereunder, to enforce compliance with its provisions by restoring possession of an apartment to a tenant claimed to have been removed unlawfully.

The defendant, with one Chambers, in February, 1950, became the owner of a tenement at 19 East 112th Street, in this city. Among the tenants was one Julio Rivera who had occupied apartment 2 with his family since 1943, at a monthly rent of $24. Since the defendant became a co-owner she has personally managed the premises.

In response to complaints of the tenants against the superintendent the defendant on or about April 11, 1950, discharged him. Late in the evening of April 11, 1950, the defendant met with the tenants, including Rivera in one of the apartments in the house. The case hinges on what occurred on that occasion between Rivera and the defendant. Their respective versions are in sharp conflict on essentials. I do not deem it necessary to recite the evidence in detail. It suffices to state the facts as I find them in the light of the inherent probabilities. The defendant was in immediate need of some one to perform janitorial service in place of the discharged superintendent and turned to Rivera to take over the task. Rivera then held a full-time position at one of the city's larger hotels which he intended to retain. Whether the defendant asked Rivera to become super-

intendent permanently or temporarily, it is clear that he consented to take the job solely on a temporary basis until the defendant could find a suitable successor to the former superintendent. This consent was induced in part by the offer of one Cotto, present at the meeting, to do a large share of the work for Rivera. Cotto did in fact move into Rivera's apartment, performed much, if not practically all, the work of superintendent and received from Rivera the money paid to Rivera by the defendant as compensation for his services.

The arrangement between the defendant and Rivera was that during the time he served as superintendent he was to receive beside his pay free rent and free gas and electricity. The arrangement was carried out and until his eviction on August 31, 1950, Rivera paid no rent.

The understanding between the defendant and Rivera was solely to tide the defendant over the emergency created by the dismissal of the former superintendent and to afford her a reasonable opportunity to find a proper substitute. Rivera did not surrender his status as a tenant nor did he intend to do so. The defendant entered into the arrangement with full knowledge of this situation and acquiesced in it. After the conclusion of and in accordance with the arrangement of April 11, 1950, Rivera occupied his apartment in a dual capacity, both as a tenant and as a temporary employee of the defendant. What is vital in the determination of the issue is that he continued as a tenant and that the defendant recognized and accepted him as such.

I reach the foregoing conclusion despite the so-called written employment agreement which the defendant had Rivera sign the very evening she came to terms with him. Every circumstance attending the preparation and signing of this paper tends to cast suspicion on it. Without elaborating on this factor, I am fully persuaded that Rivera did not know that the paper purported to relinquish his tenancy and to change his status as tenant to that of employee. The defendant unquestionably took advantage of Rivera's limited intelligence and experience and tricked him into signing the paper. A document born of such chicanery cannot serve as a weapon to deprive him of his home.

In August, 1950, the defendant discharged Rivera as superintendent and requested him to vacate the apartment. Rivera complained to the local rent office of the State Rent Commission and the local rent administrator notified the defendant of the illegality of the threatened eviction. As late as August

30, 1950, the defendant informed the local rent administrator that she would not evict Rivera except through his office. Yet, despite the assurance so given, on the very next day, August 31, 1950, the defendant, without resort to legal process of any kind, physically evicted the Rivera family. This final act of duplicity climaxed the defendant's campaign to evict Rivera. Apartment 2, formerly occupied by the Rivera family, is now occupied by a brother of the defendant's co-owner, said to be the superintendent, the apartment of the former superintendent now being rented as a furnished apartment to others.

It having been found that Rivera, when evicted, was a tenant, his eviction was in plain violation of the Rent and Eviction Regulations promulgated by the Temporary State Housing Rent Commission under the authority conferred by section 4 of the act. Sections 51 *et seq.* prescribe in detail the procedure governing evictions, notice to the local rent office being required in certain classes of cases and an eviction certificate in others. Subdivision 3 of section 51 provides that no tenant shall be removed or evicted unless his removal or eviction has been authorized by a court of competent jurisdiction. Obviously, there was here no attempt to comply with the regulations for the defendant has insisted that by the April 11, 1950, paper Rivera became a service employee and that his apartment is therefore, exempt from the regulations. (Rent and Eviction Regulations, § 10, subd. 2.) Since this contention has been rejected and the apartment is subject to the regulations, it is clear that the eviction was illegal.

The continuing housing emergency and the impending lapse of Federal rent control prompted the adoption of the State act. Its beneficent effect finds apt illustration in this case. Rivera has already been evicted. Nevertheless, the court is empowered to fashion a remedy by which he can be restored to his home. For the act itself provides:

" § 10. *Enforcement.* 1. Whenever in the judgment of the commission any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section nine of this act, the commission may make application to the supreme court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the commission that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Here, the situation demands an enforcement order, directing the defendant to restore Rivera to possession. Only through such direction can the act be vindicated. In giving this relief the court acts in the public interest. (*Porter* v. *Warner Holding Co.*, 328 U. S. 395, 402; *Greider* v. *Woods*, 177 F. 2d 1016; *Creedon* v. *Randolph*, 165 F. 2d 918.) True, the tenant will also benefit; that result is, however, incidental and secondary.

The act embodies a wise policy in a critical emergency. Because this emergency directly affects the health and welfare of its citizens the State itself is vitally concerned in the enforcement of the act. The State has expressed this concern by empowering its agencies to invoke judicial action against violations. When, as here, a violation is established, the court should lend its sympathetic aid tothe attainment of the act's purposes, by granting full and effective relief.

The foregoing constitutes the decision in the case. Settle judgment in accordance herewith.