Bayer, M.
This case comes before me under subdivision h of section 130 of the New York City Criminal Courts Act. The complaint charges the defendant with violation of subdivision g of *829 section 436-5.0 of the Administrative Code of the City of New York. The complainant, a police officer, arrested the defendant on July 12, 1955, at 3:15 in the morning, along with three others, all seated in an automobile stolen in the State of New Jersey. A search of the car disclosed hidden under the front seat, an object substantially the same size and dimensions as a .45 calibre automatic, constructed of wood, painted black, containing plastic hand guards and a barrel, wholly opened, fitted with a metal rim extending into the barrel about one inch. The defendant, a New Jersey resident, admitted he owned the pistol, which he had constructed while in service on active duty in Korea. He had painted it black, although he had access to other colors, and had never inserted a plug in the barrel. He further testified that he was invited to ride to New York in the early morning for a social visit and that he had taken the pistol in question because he feared it would be stolen.
The defendant is charged with the violation of subdivision g of section 436-5.0 of the Administrative Code of the City of New York, which provides as follows: “ It shall be unlawful for any person to sell or offer for sale, possess or use or attempt to use or give away, any toy or imitation pistol or revolver which substantially duplicates an actual pistol or revolver, unless said imitation or toy pistol or revolver shall be colored in colors other than black, blue, silver or aluminum, and further provided that the barrel of said toy or imitation pistol or revolver shall be closed with the same material of which the toy or imitation pistol or revolver is made for a distance of not less than one-half inch from the front end of said barrel. However, the possession or display of such instrument by a manufacturer or dealer, shall not be a violation of this section if sale is accompanied by delivery to a point without the city, and possession for such purpose by a manufacturer. or dealer shall not be unlawful. Every such toy or imitation pistol or revolver hereinafter manufactured, distributed, transported or sold shall have legibly stamped thereon, the name of the manufacturer or some trade name, mark or brand by which the manufacturer can be readily identified. * * * Any person who shall violate this subdivision shall be guilty of a misdemeanor, punishable by a fine of not more than one thousand dollars ($1,000) or imprisonment not exceeding one (1) year, or both.”
The defendant moved to dismiss the complaint on the ground that the provision of the Administrative Code upon which the prosecution is based, is unconstitutional and void as it violates the constitutional guarantees protecting personal liberty and *830 private property; and that the section is vague and indefinite in that it fails to provide comprehensive guides for its enforcement.
It is a familiar rule of construction that the intent with which statutes have been enacted is to be determined from the content, the occasion and necessity of the law, from the evils to be corrected, and the objects and remedy in view. The legislative intent is to be sought and ascertained from the words and language used (McCluskey v. Cromwell, 11 N. Y. 593).
We must start out with the presumption that the legislation is constitutional and valid, and however the courts may doubt the wisdom of an enactment they cannot pronounce the same unconstitutional unless able to see either that there is no real, substantial evil of public interest to be guarded against, or that there is no reasonable relation between the evil and the purported cure or prevention offered by the statute. (People v. Griswold, 213 N. Y. 92, 97; United States v. Jin Fuey Moy, 241 U. S. 394.)
For the safety of the public, for the preservation of the public peace, in the exercise of the police power, the means employed being within its discretion and not in that of the courts, unless flagrantly in violation of constitutional provisions, the city council has passed a regulative, not a prohibitory act, legislation which has for its object the promotion of the public welfare and safety, falls within the scope of the police power and must be submitted to even though it imposes restraints and burdens on the individual. The rights of the individual are subordinate to the welfare of the State. The only question that can then arise is whether the means employed are appropriate and reasonably necessary for the accomplishment of the purpose in view and are not unduly oppressive. (People ex rel. Nechamcus v. Warden of City Prison, 144 N. Y. 529; People v. Ewer, 141 N. Y. 129; Wright v. Hart, 182 N. Y. 330; Holden v. Hardy, 169 U. S. 366; Gundling v. Chicago, 177 U. S. 183; Lemieux v. Young, Trustee, 211 U. S. 489.)
In considering the imitation pistol, we are no longer playing with the innocent little toy of our boyhood. We are now confronted with an object similar in all respects to a pistol or automatic which, when pointed at the breasts of men, is used daily in the commission of bank robberies, holdups and other atrocious crimes. The city council, being faced with a newly developed crime, under the guise of a newly developed weapon, an illegitimate implement of thugs and brutes in carrying out their unlawful purposes, for the safety of the public peace and *831 in the exercise of the police power, has used the means within its discretion and passed a regulative act, not a prohibitory act. It only prohibits the sale, possession and use of imitation pistols and revolvers, surrounding it with stringent tests as to size, color and barrel, and declared that these and only these, come within such regulation. Such, legislation, which has for its object the promotion of public welfare and safety, falls within the scope of police power, must be submitted to even though it imposes restraints and burdens on the individual.
Defendant’s argument is based on the false premises that any regulation of society which is made for the general welfare is invalid if it prohibits a person from doing what he would otherwise have a right to do. That the rights of the individual are subservient to the welfare of the general public is uniformly recognized by the courts. (Jacobson v. Massachusetts, 197 U. S. 11; Booth v. Illinois, 184 U. S. 425.)
Government possesses many powers which it does not habitually or frequently exercise, and only puts forth to remedy particular evils or to meet occasional exigencies, but it must necessarily have the same right to prohibit any particular traffic or branch of traffic which it finds or deems injurious, and to declare it criminal, that it has to prohibit and declare criminal the injurious conduct and practices of men in other respects. Otherwise, the right to property and its transmission would be held superior to the right to life and liberty.
As stated in Wynehamer v. People (13 N. Y. 378, 474-475): ‘ ‘ This whole controversy, so far as it involves any question of principle, is narrowed down to a struggle for the right of the individual to traffic, in whatever the law adjudges to be property, at his discretion, irrespective of consequences, over the right of government to control and restrict it within limits compatible with the public welfare and security. Everything beyond this is merged in considerations of expediency. This right of the owner to traffic in his property never was, since the institution of society, a right independent of the control of government. It is a right surrendered necessarily to the government, by every one when he enters into society and becomes one of its members. A government which does not possess the power to make all needful regulations in respect to its internal trade and commerce, to impose such restrictions upon it as may be deemed necessary for the good of all, and even to prohibit and suppress entirely any particular traffic which is found to be injurious and demoralizing in its tendencies and consequences, is no government. It must lack that essential element of sovereignty, indispensably *832 necessary to render it capable of accomplishing the primary object for which governments are instituted, that of affording security, protection and redress to all interests and all classes and conditions of persons within their limits. If, therefore, the act in question was, as is claimed, a naked prohibitory act, suppressing the traffic in this species of property altogether, which it clearly is not, the presumption would be that it was deemed by the legislature necessary for the public welfare, and I know of no power which could abrogate it except that by which it was enacted. * * * The conclusion of the legislature upon this question of fact is final and conclusive upon all courts and all persons, as long as the statute remains unrepealed. And the proposition that the government does not possess the power to protect itself and its citizens, to whom it owes protection as a primary and paramount duty, against the consequences of such a traffic, by prohibiting the traffic itself, is monstrous, and strikes at the very foundation of all government.”
The Legislature is justified in guarding against evils both real and fairly to be anticipated by any legislation which reasonably tends to prevent them, and it has a wide discretion in formulating the means which shall be adopted to this end. It is a sufficient basis for legislative action if only there are reasonable grounds for belief that the evil may occur, and even though there be an earnest conflict of serious opinion on the subject.
Whether subdivision g of section 436-5.0 of the Administrative Code is a wise law, whether it will accomplish the purpose for which it was intended, whether it will check crimes of violence, is not the business of the court to inquire. If it fails to accomplish the purpose intended, if it creates more evil than good, it can easily be repealed by the same lawmaking power which enacted it. The sole question for the court is, not whether the city council ought to have enacted the particular statute, not whether the particular statute was wise, but solely whether it was within the power of the council to adopt. The motives actuating and the inducements held out to the council are not the subject of inquiry by the courts, which are bound to assume the lawmaldng power acted with a desire to promote the public good. Its enactments must stand, provided always that they do not contravene the Constitution, and the test of constitutionality is always one of power — nothing else. (Bohmer v. Haffen, 116 N. Y. 390, 399.)
A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning or the fact that it is *833 susceptible of different interpretations, will not render it nugatory. In determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required by them, the courts should view the statute from the standpoint of the reasonable man who might be subject to its terms. In People v. Grogan (260 N. Y. 138, 145) the court stated: “ Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements.” (See, also, Connally v. General Constr. Co., 269 U. S. 385, 391, and People v. Briggs, 193 N. Y. 457, 459.)
The statute clearly states that it prohibits imitation pistols which are colored black, blue, silver or aluminum, these being the common colors of actual weapons. It does not prohibit any other color. Likewise, the statute states that the barrel must be closed and plugged with over one-half inch of material. These provisions are clear and readily understandable by anyone purchasing an imitation pistol. These limitations, with the exemptions set forth in the statute, make the statute clear and definite, so that it is capable of being understood and enforced. Courts certainly ought not to extend the provisions of the Constitution, by a strained construction, for the purpose of shielding and fostering a traffic which, in the judgment of the Legislature, is productive of such serious evils.
I find no weight or substance to the contention that the State has pre-empted the entire field by the passage of such laws as section 1894-a of the Penal Law (“ Sale, distribution and possession of fireworks.”)-, section 1896 of the Penal Law (“ Making and disposing of dangerous weapons”), and section 1897 of the Penal Law (“ Carrying and use of dangerous weapons.”).
All these statutes have to do with weapons in which powder of some form or other is used. The State has done nothing in the field of “ toy or imitation pistol or revolver which substantially duplicates an actual pistol or revolver ” as used in the ordinance.
In deciding whether the section quoted is unconstitutional, I am of the opinion that the court should rigidly adhere to the rule that any doubt with respect to the constitutionality of legislation should be resolved in favor of the people whose representatives enacted it, and should decliné to enforce it only when convinced that its enactment was clearly a violation of some *834 restriction or limitation on the lawmaking power found in the Federal or State Constitutions. The authorities cited are sufficient to warrant a finding that the section in question is constitutional.
Accordingly, all motions on behalf of defendant are denied and defendant is found guilty as charged.