Saul S. Streit, J.
This is an action by the State Rent Administrator in pursuance of section 11 of the State Residential Rent Law (L. 1946, ch. 274, as amd.) for a permanent mandatory injunction directing the landlord to restore to the tenants of premises 311 West 111th Street in the borough of Manhattan the elevator service heretofore provided on the date when the maximum rents were determined.
The complaint alleges that the premises are subject to rent control; that the elevator service in these premises was an essential service; that the owner of these premises discontinued said service on February 25, 1954 without first obtaining permission from the administrator in accordance with subdivision 1 of section 35 of the State Rent and Eviction Regulations ; that the owner continues to refuse to restore the elevator service upon demand of the tenants; that the owner is about to engage in acts which will constitute a violation of section 35 of the State Rent and Eviction Regulations and section 10 of the State Residential Rent Law; and asks for this permanent injunction directing the restoration of the elevator service.
The defendant admits that the elevator service has been discontinued but denies any responsibility therefor. It contends that it acquired the premises long after the discontinuance of the elevator service; that prior to the commencement of this action the tenants sought and obtained from the administrator a reduction of the rent because of the discontinuance of this elevator service; that the old elevator is obsolete and beyond repair and would now cost $22,000 to replace; that it is financially unable to install a new elevator and that the court is without power to direct the making of a major capital improvement.
Hereafter I shall refer to the provisions of the State Residential Rent Law by section numbers of the act and of the State Rent and Eviction Regulations by regulation section numbers.
We will return to these issues after examining the testimony.
The evidence before me discloses that this is a 6-story building, over 60 years old, containing 28 apartments, 4 to a floor. There are two fours, one five- and one six-room apartments on each floor. The building is assessed at $55,000. Its market value is uncertain. There is a first mortgage of $30,000 and a second mortgage of $30,000 held by Elsie Schwartz, the wife of the defendant S. A. Schwartz, president of the landlord corporation. The gross income from the property is about $16,800. The carrying charges, exclusive of interest on the second mortgage, total approximately $15,000.
*637 It appears that sometime in 1953 the defendant S. A. Schwartz and his wife Elsie had an interest in a third mortgage on these premises and that Mr. Schwartz was collecting the rents for the protection of the mortgagor and the mortgagees. It is undisputed that on February 25, 1954 the elevator in these premises (which was over 60 years old) broke down due to deterioration and obsolescence and that the Department of Housing and Buildings informed the then owner that this elevator could not be restored to service.
From February 25, 1954 to the present time the building has been operated without elevator service.
After complain(; by the tenants and upon evidence adduced at a hearing, the local rent administrator on May 7, 1954, ‘ ‘ upon the grounds stated in section 36 * * * and based upon
landlord’s failure to comply with the requirements of section 35 ” reduced the rents “as of February 25, 1954, the date of discontinuance of elevator service ”.
On August 2, 1955 Elsie Schwartz, the third mortgagee, took title to these premises in foreclosure. On August 3, 1955 she transferred the property to the defendant Milford Realty Corporation. There is no doubt that S. A. Schwartz, president of the Milford Realty Corporation, was aware of the lack of elevator service in the premises at the time the defendant corporation took title.
It is also uncontradicated that the cost of constructing and installing a new elevator and its appurtenances is approximately $22,000.
Shortly after taking title and in September, 1955, the present owner applied for a prior opinion pursuant to sections 117 (subd. 2) and 33 (subd. 1, par. c) of the State Rent and Eviction Regulations to ascertain to what extent the maximum rents would be increased if it made a “ major capital improvement ’ ’ by the installation of a new elevator.
While that proceeding was pending, and on October 3, 1955, the administrator brought this action for an injunction to compel the owner to restore the elevator service. The defendant’s time to answer the complaint was adjourned from time to time until October, 1956.
Meanwhile, a hearing was had on the landlord’s application under regulation section 117 (subd. 2), and on November 16, 1955, the local rent administrator held that ‘ ‘ the proposed work and improvements would result in a major capital improvement ” and determined “ that upon its completion orders will be issued restoring the rents to what they were on February 25, 1954”.
*638 On December 14, 1955 the landlord filed a protest with the State Rent Administrator wherein he pointed out that the proposed cost of the new elevator would be over $22,000, that his offer included other advantages to the tenants and that the new service would continue for 24 hours per day instead of 14 as heretofore. He asked that the maximum rents be increased to 15% above the original levels. On July 12, 1956 the administrator granted the landlord’s protest in part and held that ‘ ‘ the proposed work and improvements will result in a major capital improvement” and that upon its completion “the rents were to be increased 5% above what they were on May 23, 1954.” 0
The landlord did not proceed with the construction of a new elevator. On December 6, 1956 it filed its answer to the complaint for an injunction. On January 31, 1957 the action was reached for trial. We now return to the issues.
In effect the State Rent Administrator seeks a mandatory injunction to compel the owner to install a new elevator on the ground that it failed to make application for permission to discontinue the elevator service in violation of regulation section 35 (subd. 1) and section 10 of the act.
The defendant admits that the elevator service has been discontinued, denies responsibility therefor and contends that the tenants have obtained an adequate remedy therefor by a reduction in rents; that it is financially unable to install a new elevator and that the court is without power to direct the making of a major capital improvement.
In this action for a permanent injunction, the burden is upon the plaintiff to establish:
(1) that the elevator service in these premises is an essential service;
(2) that it was discontinued without first making an application to the State Rent Commission in violation of regulation section 35 (subd. 1) and section 10 of the act;
(3) that this court is empowered under the act to direct a landlord to make a major capital improvement, and
(4) that the facts and circumstances of this case compel the equitable relief demanded.
There is no dispute that the elevator service in these premises was and is an essential service or that it was discontinued on February 25, 1954.
The first question is, was this defendant guilty of a violation of regulation section 35 (subd. 1) and section 10 of the act.
Regulation section 35 (subd. 1) provides: “ Until the accommodations become vacant the landlord shall maintain the same *639 dwelling space, essential services * * * and equipment as required under Section 24 unless and until he has filed an application to decrease the dwelling space, essential services * * * or equipment and an order permitting a decrease has been entered thereon by the Administrator. ’ ’
Section 10 of the act provides: “It shall be unlawful * * * for any person * * * to do or omit to do any act, in violation of any regulation, order or requirement hereunder ’
The facts are that the elevator ceased running on February 25, 1954, when the prior owner was in possession and control. Admittedly this 60-year-old elevator ceased to operate because of obsolescence and deterioration and that it was beyond repair. There is no evidence before me of any act of omission or commission on the part of the prior or present owner with respect to this elevator. Nonetheless I am constrained to hold that regulation section 35 (subd. 1) is mandatory when it says: ‘ ‘ the landlord shall maintain the same dwelling space, [and] essential services * * * as required under Section 24 unless and until he has filed an application ” (italics supplied) and obtained permission.
The violation of this regulation does not consist of a failure to apply for permission to discontinue an essential service. If this were so, such failure to apply could be excused when extenuating circumstances exist such as discontinuance due to an involuntary destruction, obsolescence or deterioration.
The gist of the violation is the failure to " maintain the same * * * essential service ”. Where there is such a failure, without permission, the violation attaches to the property. A landlord under the act and regulations means the person in possession and control.
Some of the acts of the defendant’s predecessor in interest may not be binding on the defendant, but the present landlord does have an obligation to maintain the same essential services. The question of good faith or financial ability is not involved in a violation of regulation section 35 (subd. 1) as such, though they may be factors in an action for equitable relief.
I am therefore of the opinion that the defendant has violated regulation section 35 (subd. 1) and that it is subject to the consequences attendant upon such decrease of essential services. I am not prepared to hold, however, that the landlord’s failure to maintain the elevator service in the posture of this case subjects it to the penal sanctions of sections 10 and 11 of the act.
*640 Assuming, however, without deciding, that the mere cessation of an essential service does constitute a violation within the meaning of section 10 of the act, does this court have the power to direct the landlord to make a major capital improvement? I think not. The purposes of the State Residential Rent Law are “ to prevent exactions of unjust, unreasonable and oppressive rents” (L. 1950, ch. 250, § 1) and to prevent undue rent increases (Matter of New York Univ. v. Temporary State Housing Rent Comm., 304 N. Y. 124). Nowhere in the four corners of this act or in any of the regulations do I find any power or authority for this court to direct an owner to make a major capital improvement.
The only reference to any major capital improvement in the act is found in section 4 (subd. 3-a, par. [2]) and this subdivision refers to: “ (2) the amount of increases in maximum rent authorized by order because of increases in dwelling space, services * * * or major capital improvements.”
Subdivision 5 (par. [b]) of section 4 of the act very clearly supplies the penalty which the commission may impose in the event of a diminution of essential services: “ (b) Whenever in the judgment of the commission such action is necessary or proper in order to effectuate the purposes of this act, the commission may provide regulations to assure the maintenance of the same living space, essential services * * * as were provided on the date determining the maximum rent, and the commission shall have power by regulation or order to decrease the maximum rent for any housing accommodation with respect to which a maximum rent is in effect pursuant to this act if it shall find the living space, essential services * * * or equipment to which the tenant was entitled on such date has been decreased.”
The scope and tenor of the entire act and the 146 regulations adopted in pursuance thereof provide for the fixing of maximum rents and the adjustments of rents. Indeed the very regulation section (§ 35) which this defendant violated provides the remedy for such diminution of an essential service. It says: “4. If the landlord shall have failed to file an application * * * as required by paragraphs 1 or 2 of this section, the maximum rent shall be deemed in doubt and the Administrator may issue an order fixing the maximum rent pursuant to Section 36.”
Section 36 of the regulations provides: “ (b) Where the landlord has failed to file an application * * * required by paragraphs 1 and 2 of Section 35, the Administrator at any *641 time upon written request of either party, or on his own initiative, may issue an order establishing the maximum rent by decreasing the previous maximum rent of the housing accommodations by that amount which the Administrator finds to be the reduction in the rental value of the housing accommodations because of the decrease in * * * essential services * * * or equipment.”
In fact, this is what the tenants demanded in 1954 and this is what the administrator ordered on May 7, 1954.
The intent of the Legislature is clear when section 4 (subd. 5, par. [b]) and the regulations are read together. To hold that the Legislature intended to coerce or compel a landlord to make a major capital improvement would be an unreasonable construction. An interpretation which is contrary to the dictates of reason or leads to unreasonable results is presumed to be against the legislative intent (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 143).
In a proper case at the instance of the administrator the court may grant a temporary or a permanent injunction, prohibitory or mandatory (State Residential Rent Law, § 11; People ex rel. McGoldrick v. Wade, 199 Misc. 447; Barbee v. 2639 Corp., 284 App. Div. 298, 301; Collins v. Efef Associates, 129 N. Y. S. 2d 644) but these are all incidental and in order “ to effectuate the purposes of this act ”.
The statute (§§ 2, 4, subd. 5, par. [b]) and regulations (§ 33, subd. 1, par. c; §§ 35, 36) recognize a distinction between essential services and a major capital improvement. So have the courts (People ex rel. McGoldrick v. Sterling, 283 App. Div. 88; Matter of Moley v. Weaver, 161 N. Y. S. 2d 1006). The opinions of the local rent administrator (November 16, 1955) and the State Administrator (July 12, 1956) hold that the installation of a new elevator in this building would be a major capital improvement.
The statute does not define what is a major capital improvement, but it would be fair to say that it is a substantial rehabilitation or addition to a building which would materially add to the value of the property or appreciably prolong its life.
It is conceded that the old elevator has been condemned and it is not disputed that the cost of replacement would be approximately $22,000, at least as much as the defendant’s entire equity and 40% of the assessed valuation.
It is settled law that statutes based on the exercise of the police power of the State restricting and regulating property rights should be strictly construed (People v. Sommer, 55 Misc. *642 55, 58), nor should they be extended beyond the evil sought to be curbed (People ex rel. McGoldrick v. Regency Park, 201 Misc. 109, affd. 280 App. Div. 804).
It is my opinion that sections 10 and 11 of the act cannot be construed to authorize the direction of such an expenditure for a major capital improvement under the guise of restoring an essential service.
Moreover the compulsion to expend $22,000 on a building assessed at $55,000 whose market value is dubious, would approach confiscation and a denial of due process. As was pointed out by Judge Peckham in Health Dept. v. Rector, Church Wardens & Vestrymen of Trinity Church (145 N. Y. 32, 41): “It cannot be claimed that it would have the right, even under the exercise of the police power, to command the doing of some act by the owner of property and for the purpose of carrying out some provision of law, which act could only be performed by the expenditure of a large and unreasonable amount of money on the part of the owner. If such excessive demand were made the act would without doubt violate the constitutional rights of the individual. The exaction must not only be reasonable when compared with the amount of the work or the character of the improvement demanded. * * *
If the expense to the individual under such circumstances would amount to a very large and unreasonable sum, that fact would be a most material one in deciding whether the method or means adopted for the attainment of the main object were or were not an unreasonable demand upon the individual for the benefit of the public.”
In the language of Mr. Justice Breitel in Barbee v. 2639 Corp. (284 App. Div. 298, 301, supra): “ The tenants in this case did seek redress through the administrative agency, and they obtained a form of pecuniary relief, namely the 10% reduction in their rents. This alone would suffice to defeat their cause of action on the basic principle that one is not entitled to more than one satisfaction for his injury.” True, in the action at bar the administrator is the one who asks for an injunction; nonetheless, I hold that under the circumstances of this case the remedy for a diminution of essential services is a decrease in the maximum rents and that such remedy is adequate.
Finally it should be borne in mind that we are in a court of equity and equitable relief is not within the absolute discretion of the Supreme Court but must be refused as a matter of law when the facts found compel the conclusion that an *643 injunction would be unjust (Forstmann v. Joray Holding Co., 244 N. Y. 22).
There was some reference at the trial to the fact that the discontinuance of the elevator service may constitute a violation of the Multiple Dwelling Law or fire prevention or health laws. Such violations if they exist are not before this court.
The complaint is dismissed and judgment is directed for the defendant. Submit order.