Clabexce J. Henby, J.
Underlying herein is a pending action against the defendants, appropriate officers of the City of Rochester, whereby the plaintiffs seek a declaratory judgment and a permanent injunction on the ground that certain successively adopted ordinances of the city prohibiting the use of so-called “rope-geared, hydraulic elevators” for passenger service are unconstitutional.
The latest of the prohibitory ordinances (Ordinance No. 60-500, passed Dec. 27, 1960) establishes December 31, 1961 as a deadline for such use and, because the City Superintendent of Buildings has expressed intention of enforcing the prohibition, the instant motion is for an injunction pendente lite. This latest ordinance is, therefore, that which is principally in question on this motion, although the validity of its predecessors has incidentally been attacked.
*30 Historically, three ordinances (the first creating, and the later two amdg. Municipal Code, vol. II, § 85-2.1) have been adopted by the City Council, each prospectively forbidding the use of rope-geared hydraulic elevators for passenger transportation. The first, Ordinance No. 49-454 (passed Dec. 13, 1949), prohibited such use after December 31, 1951. It was succeeded by Ordinance No. 52-236 (passed June 24, 1952), which prohibited such use after October 1, 1952, and that ordinance was in turn succeeded by Ordinance No. 60-500, above mentioned. In each instance the ordinances have been denounced as invalid by the plaintiffs and none have been enforced, until the Superintendent of Buildings made known his intent to do so after December 31, 1961. Such neglect of City Council mandates, over a period of approximately 11 years, suggests inferentially that doubts as to the validity of the several ordinances may have existed in the minds of those charged with enforcement. While not governing the conclusion herein, the inference contributes a measure of color.
The elevator in question is located in the Cook Building, at No. 15 South Avenue, in the City of Rochester and for many years has been servicing occupants of that building and their customers. The Louric Realty Corporation, one of the- plaintiffs, has owned the building since 1945. The other plaintiffs, Fred C. Streb (firm name, Ayer & Streb) and Beverly Brown (firm name, Brown & Rice), both operate printing concerns, the former occupying the entire fourth and fifth floors, and the latter the entire third floor. Examination of the affidavits submitted by each satisfies that use of the elevator for business passenger service, while not extensive, is essential to the continuance of both businesses, and that enforced discontinuance of such use would inflict great and irreparable hardship upon all three plaintiffs. To mention but a few of the involved problems, the tenants, if they remain in the building, will obviously suffer considerable loss of business, much of it perhaps permanent, during the several months required to install a city-approved type of elevator, and if they move, are faced with the difficulties of locating suitable new premises, the inconvenience and expense involved in moving their heavy equipment, loss of customers, and, of signal significance, loss of good will arising from continuous occupancy of the building over a long period of years. The owner, in the event of enforcement, may anticipate the probable loss of its tenants, total loss of rents during the period of replacement installation, and an expense in the agreed neighborhood of $50,000 to effect replace *31 ment, which, at a net annual income of about $2,500 from the building, would capture all ownership profit from it for the next 20 years.
Coupling the clear picture of hardship upon the plaintiffs which enforcement would produce with the omission on the part of the city to enforce any of the three ordinances over the 11 years of their successive existence, fairness and absence of urgency would seem to dictate the issuance of at least a temporary restraint of enforcement, until the ultimate rights of the parties can finally be determined upon trial of the action. However, as other reasons for intervention exist, they will be discussed, and, while, of necessity, they bear upon the final answer, they are now considered solely upon the present motion for preliminary relief.
A municipality, pursuant to State grant of power, has recognized authority to enact, within its sphere, ordinances pointed toward securing the health, safety and welfare of the public, usually under police power. Such authority is not without limit, for ordinances so schemed must meet tests of necessity and reasonableness in order to survive constitutional requirements of due process and equal protection of the law. Actually, in most instances, the application of such tests, when private rights are curtailed, amounts to a rather fine balancing of the rights of the individual against the benefits sought on behalf of the public, and rules have developed which guide and govern the process.
Ordinances are not rendered unconstitutional solely by reason of the fact that they impose burdens upon property owners, and proper exercise of police powers has often been held to prevail over property and pecuniary rights of individuals (Matter of Warshaw v. Jacobs, 16 Misc 2d 844, and cases therein cited); but hardships so imposed upon an individual are of secondary concern only when the public need, reflected in the ordinance, is apparent, and the ordinance is necessary and reasonable in application (Health Dept. v. Trinity Church, 145 N. Y. 32). The last adjective has been described as one of the inherent limitations of the police power (Cowan v. City of Buffalo, 247 App. Div. 591), and the question as to whether an ordinance enacted under such power complies with the rule of reasonableness depends upon the facts and circumstances of the considered matter and the character of the ordinance (Matter of Wulfsohn v. Burden, 241 N. Y. 288); in other words, is the questioned ordinance, under given circumstances, reasonable or arbitrary, and is it designed to accomplish a legitimate *32 public purpose? It is this test which must be applied to the ordinance now under examination; and under it I conclude that present section 85-2.1 fails, for the following reasons:
The language of the ordinance itself discloses the existence of no condition of menace to the public safety which the City Council sought to correct by its enactment, nor does such appear from other sources. The city has submitted an affidavit containing a categorical claim that the plaintiffs’ elevator is dangerous and unsafe for passengers, but the claim is rather conclusively contradicted by plaintiffs’ affidavits showing a 40-year-plus history of safe operation of the elevator, recent extensive and expensive repairs, its present safe condition, and widespread use of elevators of similar design, construction and age throughout the State. The solitary tangible item of danger relied upon by the city is a claimed tendency of the elevator to varyingly “ drift ” or “ creep ” from 1 to 6 inches from the level of the several floors of the building, but this defect appears responsive to corrective maintenance. In this connection, it is difficult to reconcile the elimination of passenger service (as the ordinance proposes to do) with implicit permission to continue the elevator’s use for freight purposes (with which the ordinance does not propose to interfere), when the latter use would necessarily include as an incident of accomplishment a gallimaufry of postal, express, carting and other delivery people as passengers. The city endeavors to avoid inconsistency with the suggestion that ‘1 freight-handlers ” are more apt to be familiar with elevator operation, thus lessening the danger, but it seems likely that a fair percentage of users would be strangers to this particular lift, it being apparently one of the last two of its type in the city. Thus it appears that, even if a satisfactory display of danger could be said to have been presented, there is lacking a reasonable relation between such dangers and the form of ordinance which seeks to correct it, when the latter forbids use for one class of passengers and implicitly exempts another.
An ordinance which restricts the use of property, to survive the test of reasonableness, must not be unduly oppressive. It may be oppressive and still deemed reasonable, given an apparent and demonstrated public menace, for the private interest must give way to the public good — but private rights can only be required to recede to an extent reasonably calculated to satisfy the public need. Exercise of the police power cannot be extended beyond the evil sought to be curbed (People ex rel. McGoldrick v. Regency Park, 201 Misc. 109, affd. 280 App. Div. 804), and even under extremely menacing conditions the rights *33 of a property owner cannot be invaded further than is reasonable to accomplish rectification (Barrett v. State of New York, 220 N. Y. 423; Good Humor Corp. v. City of New York, 264 App. Div. 620; People v. Klufus, 1 Misc 2d 828). Where, as in the instant matter, the presence of menace requiring cure has not been shown, a restrictive enactment must be regarded as unduly oppressive per se. The only reasonable regulation under the conditions here unfolded would be a requirement that the plaintiffs’ elevator be maintained in a safe operating condition. A regulation that it be abandoned for passenger purposes, without satisfactory indication that the passengers are in danger, is undue and unreasonable. Without just cause it discriminates against elevators of that type, thus denying equal protection of the law (Merchants Refrig. Co. v. Taylor, 275 N. Y. 113).
All three of the plaintiffs acquired their relationship to the Cook Building and the included elevator prior to the adoption of any of the restrictive ordinances directed against rope-geared, hydraulic elevators — the owner’s title running back for 15 years, and the tenants having been in occupancy for 40 and 25 years respectively. The elevator is essential to the businesses of all three and they have, therefore, a vested and valuable business and property right in it. The ordinance has a retrospective effect on that right. The law is peculiarly jealous of vested rights, tends sharply to scrutinize retroactive legislation which adversely affects them, and countenances such legislation only when the hardship it inflicts is clearly outweighed by the public good it seeks (see People v. Miller, 304 N. Y. 105; Fougera & Co. v. City of New York, 224 N. Y. 269). Where no menace requiring cure has been shown to exist, the balance overwhelmingly favors the vested rights. The ordinances herein, proscribing a principal use of the elevator, previously vested as a right, launch too stern a measure to merit the mantle of reasonableness, absent a showing that public need demands the proscription.
A final reason compelling invalidation of the ordinance is the extent of cost imposed upon the landlord plaintiff in order to conform to its requirements, balanced against the benefit sought to be accomplished for the public. It has already been concluded that, under the circumstances displayed, no great public benefit can be achieved, for no serious menace has been shown. As against this situation, the plaintiff owner, possessed of an aging building which commands the relatively modest net income of $2,500 per year, would be required by enforcement of the ordinance to expend in the neighborhood of $50,000 — 20 years’ profit — in order to effect conformity. The plaintiff *34 tenants face recognizable loss of business if they remain during replacement, and considerable similar loss and appreciable expense if they depart. Expense is an item of consideration in the balance of reasonableness (Health Dept. v. Trinity Church, 145 N. Y. 32, supra; Hyde v. Incorporated Vil. of Baxter Estates, 140 N. Y. S. 2d 890, affd. 2 A D 2d 889; affd. 3 N Y 2d 873; Abrams v. Schwartz Co., 7 Misc 2d 635) and where the expense of conforming to the ordinance is onerous, out-balancing the good sought, the ordinance may be considered unreasonable. Where need for the good is unsubstantiated, the ordinance is clearly unreasonable.
The city, in its sole and brief memorandum, submitted after the oral argument, presents a point not raised in the argument, substantially suggesting that the three prohibitory ordinances, having been totally in effect since 1949, have achieved coincidence of stature with recently developed forms of restrictive ordinances, which provide for termination of forbidden uses of prior nonconforming property after a given period of time. There has been an increasing tendency by our courts to favor such ordinances, provided the time allowed is reasonable and the owner is given a fair opportunity to “ amortize ” his investment. The matter is exhaustively and lucidly discussed in Matter of Harbison v. City of Buffalo (4 N Y 2d 553) and that case has been cited by the city in support of its suggestion. It is felt, however, that the case is not authority for the circumstances of the instant matter. Each of the three ordinances considered here contained a “ deadline ” after which passenger use of the elevator was forbidden, but such deadlines, in chronological succession, provided periods of only two years, three months and one year. None of these, individually, could be held reasonable “amortization” periods, in view of the appreciable expense involved in replacing the elevator. To endeavour to lump them together — or join the entire periods during which the ordinances were in effect — and call the total reasonable, appeals as incongruous in view of the fact that each successive ordinance was disputed by the plaintiffs as invalid, and remained in question and unenforced until replaced by a successor. Each was a separate prohibiting package containing its own ineffective deadline, and neither severally nor jointly did the three give reasonable “amortization” opportunity to the plaintiffs. Constitutionality of a prohibitory ordinance, under the rule of the Harbison case (supra) requires, it would seem, to be fair and reasonable, a single enactment containing a definite and reasonable period for amortization; and even then it must still meet the test of reasonableness in a *35 balance between the hardship inflicted upon the owner and the proposed benefit sought for the public. As Judge Frobssel said in that case, quoting from Town of Somers v. Camarco (308 N. Y. 537): “ ‘ The courts, in order to afford stability to property owners who do have existing nonconforming uses, have imposed the test of reasonableness upon such exercise of the police powers. Therefore broad general rules and tests such as expressed in People v. Miller (304 N. Y. 105), must always be considered in this context ’ ” (p. 562). This aspect of the present matter, already considered above, requires no further discussion.
The city’s memorandum also suggests that, inasmuch as safety factors are involved herein, an injunction must be denied, citing in support Caroli v. Saxl (192 Misc. 887). That case does not fully support the proposition. Safety factors are indeed a matter of grave concern, when they exist, but they can only be said to exist when menace to safety appears. However here, as earlier outlined, no successful attack has been made upon plaintiffs’ fortress of over 40 years’ safe operation of their elevator, and its instant safe condition. There has been no record of catastrophe in the operation of this or other similar elevators, as was the situation in the Caroli case, and the existence of menace fails to show on the face of the ordinance and in the submitted affidavits. Safety factors commend themselves as serious considerations opposed to restraint of enforcement of a prohibitory ordinance only when safety is shown to be threatened. Claiming that safety is the goal of such an ordinance is, alone, not enough.
The conclusion is that, under all the submitted papers, opposing arguments and considered circumstances, the best that can be said for the questioned ordinance is that it expresses on the part of the city a preference which excludes elevators of the rope-geared, hydraulic type owned and used by the plaintiffs, or — a somewhat stronger position — suspicion perhaps, that such conveyances may not be safe. Either position falls quite short of exhibiting a right to enforce an ordinance which would result in an invasion of vested property rights of the plaintiffs and visit upon them great and irreparable hardship — not, at all events, until the rights of the opponents can finally be determined upon trial.
For the purposes of the instant motion, therefore, section 85-2.1 of volume II of the Municipal Code of the City of Rochester is held unreasonably oppressive of the plaintiffs’ right and is thus unconstitutional as a deprivation of due process and equal protection of the laws. The preliminary injunction may issue.