Morris E. Spector, J.
These proceedings under motions numbers 197 and 198 of February 25, 1970, one by the landlord and the other by a tenants’ committee of the same premises, pursuant to CPLR article 78 to review a determination of the Department of Rent and Housing Maintenance, are hereby consolidated and disposed of together.
The premises in question are a 10-building complex, in two groups of five contiguous buildings each, 5410-50 Netherland Avenue and 5414-44 Arlington Avenue, set back from the public street, and traversed by private access roads, located in the Riverdale area of Bronx County. The buildings contain 272 apartments.
An officer of landlord has been tried on criminal charges brought by the Department of Water Supply, Gas and Electricity for violations in connection with serious overload of the electric wiring capacity of the premises. There are two ways in which the landlord can cure the violation: (1) by adequately wiring the premises, or (2) by reducing the load by compelling the tenants to discontinue use of air conditioners.
When' landlord sought to compel the tenants to cease using their air conditioners, it is alleged in its petition and not denied, that respondent Department of Rent and Housing Maintenance made an order preventing the landlord from doing so. Landlord then sought a prior opinion from respondent on the rent increases which would be granted for making the adequate wiring major capital improvement, alleging special circumstances requiring much higher than usual expenditure, because of the geographical situation of the buildings vis-a-vis the streets and Con Edison’s main boxes.
Respondent, after prior review on this question in this court, agreed to grant rent increases which would amortize the verified actual cost of the improvement, excluding the cost of financing, over a seven-year period. The tenants oppose this determination because respondent has promulgated a schedule of increases for improved services, which this proposed rent increase would exceed, and tenants allege that they should not be obliged to pay more than tenants of other buildings for the same service. Landlord opposes the determination because the cost of financing is a fact of life, and the proposed increase would actually amortize the improvement in about 11 years, while the money landlord alleges it must borrow, will have to be repaid in a much shorter time, creating a deficit each month, for which additional sums at an additional high rate of interest will have to be borrowed.
*240 Landlord offered several counterproposals, such as an increase sufficient to amortize over seven years the cost of the improvement including the cost of financing, or the" five-year amortization period for a major capital improvement available to landlords under the new Bent Stabilization Law (Administrative Code of City of New York, ch. 51, tit. YY) excluding the cost of financing. Landlord asserts that treating post-1947 housing-under the Bent Stabilization Law differently from pre-1947 housing under the Bent Control Law (Administrative Code, ch. 51, tit. Y) is discriminatory and violates the Constitution. It also alleges that various portions of its buildings are seven stories high, because of the slope of the land, and, therefore, it should be allowed the greater allowance for buildings seven stories or higher rather than that for six stories or under.
Bespondent ruled out the seven-story claim, because those portions of the buildings having a portion of a floor below the higher level street grade are all used for garage or other utility areas or housing building employees, and do not properly constitute seven stories of rental space. It based its seven-year amortization formula, rather than the scheduled allowances for wiring modernization, upon a careful analysis of the actual physical conditions required to bring adequate wiring from the main boxes of the utility company to all 10 buildings. The record warrants the finding of ‘ ‘ unique conditions ’ ’ as set forth in Administrator’s Interpretation No. 1, which is sufficient to find a basis for rent increases above the scheduled allowances.
Bespondent’s choice of a repayment formula is not arbitrary or capricious, nor a misuse of discretion, and the court may not substitute its judgment for respondent’s. (Matter of Colton v. Berman, 21 N Y 2d 322.) Neither is the distinction between the post-1947 and pre-1947 housing in violation of the Constitution. There are many valid reasons for creating separate classifications of housing, as for example decontrol of one- and two-family apartments while maintaining control of multiple dwellings. In this separate classification of housing, pre-1947 and post-1947, the rents for the previously completely decontrolled housing are substantially higher. In fact, previously controlled rents became decontrolled when, under rentals to new tenants, the legal rents exceeded $250. These higher rental apartments are in the main occupied by more affluent members of the community better able to pay a greater increase in rent to afford the landlord a shorter amortization period than the normally less financially comfortable tenant in pre-1947 housing.
If the narrow question of respondent’s rental increase allowance for the adequate wiring major capital improvement is the *241 only one before the court, then respondent’s determination must be upheld. However, a more basic question appears in this case. When petitioner landlord is confronted with two orders from two city agencies, must he comply with both, regardless of the cost to him? There can be no question of the validity or urgency of the violation order of the Department of Water Supply, Gas and Electricity. An overload of this type on electric lines is a major danger of fire. However, compliance with this order can take two forms, either decrease the load or increase the wiring capacity.
The landlord attempted, we are told, to decrease the load, and respondent ordered, we are told, that this may not be done. Petitioner landlord explains that said order is still in the process of administrative review, but the present case may make any determination of that order moot, because of the necessity for landlord to do something immediately on the wiring overload. An adequate wiring of these extensive premises may take some time to complete, and air conditioners are frequently in use by June in New York City.
Therefore, the question of whether or not respondent may compel landlord to make a major capital improvement of this type, where landlord finds itself financially unable to do so, is resolved herewith. I am of the opinion that it may not so compel landlord.
Respondent may order the maintenance of essential services and may decrease the legal maximum rent for landlord’s failure to provide them. (Rent, Eviction and Rehabilitation Regulations, §§ 34 and 35.) Electric wiring is an essential service, but, in this building, air conditioning is not. The air conditioners are appliances provided by the tenants, and if they damage any portion of the freehold, the landlord may require their removal. If tenants have been obliged to pay any additional rent for permission to use these appliances, respondent may reduce the rent by an equivalent amount when such permission is revoked.
The law is well settled in New York with respect to how far the police power, overseeing the health and safety of citizens, may go in compelling an owner to make large expenditures in changing his property. In Health Dept. v. Rector of Trinity Church (145 N. Y. 32) the Court of Appeals held valid legislation requiring running water inside a tenement. Tenement House Dept. v. Moeschen (179 N. Y. 325, affd. 203 U. S. 583) followed the same ruling on water closets in tenements in first class cities.
However, in a much more recent case, Abrams v. Schwartz Co. (7 Misc 2d 635) the case involved a violation of section 35 *242 of the previous rent regulations, in that the elevator of a seven-story building became inoperable, and the owner did not have it replaced. The State Rent Administrator who had decreased the rents, pursuant to section 34 of said regulations, then attempted to compel the landlord to restore the elevator service. The court found that the decrease in rent for failure to maintain elevator service was proper, but that providing a new elevator would constitute a major capital improvement. The court stated (p. 641): “ The intent of the Legislature is clear * * * To hold that the Legislature intended to coerce or compel a landlord to make a major capital improvement would be an-unreasonable construction. ’ ’
Upon the foregoing opinion, the petitions of landlord and tenant are dismissed, the proposed prior opinion of respondent is affirmed, but only upon condition that landlord voluntarily undertakes the major capital improvement.