Myles J. Lane, J.
This case poses a novel question of statutory interpretation not heretofore judicially passed upon.
The plaintiff, a former tenant of a rent controlled apartment, is suing the defendant, the former owner of the premises, to recover triple damages for alleged violation of the New York City rent control law (Administrative Code of City of New York, § Y51-6.0, subd. g, par. [1], subpar. [d]; Rent Eviction and Rehabilitation Regulations, § 71, subd. d, par. [4]). The plaintiff’s claim, in essence, is that the defendant, after evicting him, failed to personally comply with the provisions of law pursuant to which the certificate of eviction was obtained. It is conceded that such provisions of law were fully complied with by the New York Life Insurance Company which purchased the property from the defendant.
Counsel for the respective parties stipulated to an agreed statement of facts. It appears therefrom that the defendant owned multiple dwellings located at 208-214 Central Park South which were subject to residential rent control. The plaintiff was a tenant of apartment 2F at premises 210 Central Park South.
On January 8, 1965, the defendant made application to the City rent agency for permission to evict all tenants residing in said buildings on the ground the defendant would immediately demolish the premises and construct a new building with at least 20% more housing accommodations than were contained in the existing buildings. (Administrative Code, § Y51-6.0, subd. b, par. [4]; Rent, Eviction and Rehabilitation Regulations, § 58, subd. a, par. [1].) The defendant’s application was granted. After exhausting all administrative and judicial remedies, the plaintiff was evicted on February 20, 1967. He was the last tenant to be evicted from the premises.
The pertinent provisions of law dealing with the eviction of tenants from controlled housing accommodations provide, in applicable part, as follows:
*595 “Where after the city rent agency has granted a certificate of eviction authorizing the landlord to pursue his remedies pursuant to law * * * to * * * recover possession of a housing accommodation upon the ground that the landlord seeks in good faith to recover possession of such accommodation:
“(d) For the immediate purpose of demolishing such housing accommodations and constructing a new building in accordance with approved plans * * * and the landlord has failed to complete the demolition within six months after the removal of the last tenant or, having demolished the premises, has failed or neglected to proceed with the new construction within ninety days after the completion of such demolition, or having commenced such construction work has failed or neglected to prosecute such work with reasonable diligence * * *
“ Such landlord shall, unless for good cause shown, be liable to the tenant for three times the damages sustained on account of such removal plus reasonable attorney’s fees and costs as determined by the court. ” (Administrative Code, § Y51-6.0, subd. g, par. [1], subpar. [d]; Rent, Eviction and Rehabilitation Regulations, § 71, subd. d, par. [4]).
Demolition of the existing buildings was completed on July 26,1967, well within the six-month period allotted by law. While demolition work was in progress, the defendant contracted to sell the property to Lithos Properties, Inc., and on July 27,1967, the defendant conveyed the property to the New York Life Insurance Company, the assignee of Lithos Properties, Inc. At the closing the purchaser executed a long-term lease of the property to Realty Structures, Ltd., pursuant to which the lessee undertook to construct a multiple dwelling thereon in compliance with the plans and specifications previously filed by the defendant. The defendant procured an unconditional guarantee from the New York Life Insurance Company, Lithos Properties, Inc. and Realty Structures, Ltd., that new construction would commence within 90 days after July 26, 1967, and that the new building would be built in accordance with approved plans. (Administrative Code, § Y51-6.0, subd. g, par. [1], subpar. [d].)
It is conceded that new construction was timely commenced, and the building was seasonably completed as per the defendant’s filed plans and specifications. Notwithstanding that fact, the plaintiff claims the statute was violated because the construction work was done by someone other than the defendant. He construes the statute (Administrative Code, § Y51-6.0, subd. g, par. [1], subpar. [d]; Rent, Eviction and Rehabilitation Regulations, § 71, subd. d, par. [4]) to mean that the ‘ ‘ landlord ’ ’ who *596 procures the certificate of eviction must still be the landlord at the time of demolition and new construction.
There is no legal or logical basis for the restrictive interpretation of the statute urged by the plaintiff herein. In enacting the demolition and new construction sections of the Residential Rent Control Law, the Legislature was mindful of the critical shortage of housing accommodations in New York City (Administrative Code, § Y51-1.0) and deemed it to be in the long range public interest to permit demolition of rent controlled apartment buildings on condition that new buildings containing at least 20% more housing units be constructed in place thereof.
The primary concern of the Legislature was to assure new, larger apartment houses would be built according to approved plans within a prescribed time period. It was interested in obtaining what it considered to be a desirable result, and not with how or by whom that result was effectuated.
Plaintiff relies on the literal language of the statute to support his position. The applicable statutes (Administrative Code, § Y51-6.0, subd. g, par. [1], subpar. [d]; Rent, Eviction and Rehabilitation Regulations, § 71, subd. d, par. [4]) provide that the “ landlord ” must complete demolition and commence new construction within a specified period of time.
The term “ landlord ” is defined in the Residential Rent Control Law as “an owner, lessor, sublessor, assignee, or other person receiving or entitled to receive rent ”. (Administrative Code, § Y51-3.0, subd. f; emphasis supplied). For present purposes, the term “landlord” must be construed, in accordance with that definition, to include a subsequent purchaser of property who complies with the statutory mandate. (See Consolidated Mercantile Ind. v. Kirsch, 198 Misc. 677, 678 ; Damato v. Wallbank Realty Corp., 33 Misc 2d 993. See, also, Byrne v. Osias, 14 A D 2d 346 ; Abrams v. Schwartz Co., 7 Misc 2d 635, 639.)
In Consolidated Mercantile Ind. v. Kirsch (supra) a tenant and a prospective purchaser of property agreed to determine the tenant’s rent for commercial space by arbitration. The arbitrators made an award which was not to the tenant’s liking and the latter sought to avoid the award, arguing it was not binding since the prospective purchaser was not the landlord of the premises when the award was made. In rejecting that contention, the court made the following pertinent observation: ‘ ‘ The definition of 1 landlord ’ in the statute is sufficiently comprehensive to include * * * a vendee and equitable owner [citing cases] ” (p. 678).
*597 Damato v. Wallbank Realty Corp. (33 Misc 2d 993, supra) is somewhat analogous to the case at bar. In Damato, a corporate owner obtained a certificate of eviction for purposes of demolition and new construction, and then went bankrupt and was dissolved. The principals of the corporation thereafter sold the property, with the purchaser undertaking to fulfill the requirements of the Administrative Code. Demolition was completed and new construction was timely commenced by the purchaser but was not completed within a reasonable time due to construction delays. Action was brought by a former tenant against the principals of the now defunct closely held corporation pursuant to section Y51-6.0 (subd. g, par. [1], subpar. [d]) of the Administrative Code. Both parties moved for summary judgment and both motions were denied on the ground issues of fact were presented as to whether construction was delayed “ for good cause shown ” (ibid). Implicit in the court’s holding is recognition that compliance with the statutory provisions by a subsequent purchaser is a defense to an action brought by a former statutory tenant against the prior landlord of the premises. The Damato case did not proceed to trial, but was discontinued with prejudice on April 6, 1962 (County Clerk File No. 27700/1961).
In Byrne v. Osias (14 A D 2d 346, supra) the court recognized that the term “ landlord ” may at times be construed to embrace a subsequent owner of property. However, the court there held that where demolition and new construction are not completed as required by statute, the tenant’s "remedy is against the defaulting landlord and not against a subsequent purchaser who did not undertake to perform said statutory obligations at the time of purchase. The holding in Byrne v. Osias (supra) is distinguishable from the case at bar and it is not authority for according a narrow, restrictive meaning to the term ‘ ‘ landlord ” in the context in which that term is used herein.
Significantly, section Y51-6.0 of the Administrative Code makes reference to section C26-168.1 (now § C26-90.0) of the code which authorizes the city to sue a landlord failing to comply with the demolition and new construction provisions of the code. Section C26-90.0 provides, in pertinent part, as follows: “It shall be a defense to any * *• * action to recover a penalty under this section * * * if the * * * action be based on a sale of the property, that the purchaser has demolished the structure and commenced the erection of the new building within the time limits herein provided for or, if such time limits have not expired, that the purchaser has unconditionally undertaken to do so, within such time limits.” *598 This provision expresses the intendment of the Legislature that no violation of the statute occurs where a subsequent purchaser of the property complies with the statutory mandate. (See, also, Administrative Code, § Y51-6.0, subd. [h].) It would be illogical to assume that the Legislature intended to make compliance by a subsequent purchaser a complete defense in an action brought by the city and not a defense in an action brought by a tenant against the same landlord for the same alleged violation of law. ‘ ‘ An interpretation which is contrary to the dictates of reason or leads to unreasonable results is presumed to be against the legislative intent.” (Abrams v. Schwartz Co., 7 Misc 2d 635, 641.)
Even assuming arguendo that the plaintiff’s position is correct, and that the Legislature intended to prohibit an owner of property who obtains a certificate of eviction pursuant to section Y51-6.0 of the code from selling his property until demolition and new construction are completed, the plaintiff herein would not be entitled to recover. Subdivision d of section Y51-11.0 of the code provides: “ No person * * * shall be held liable for damages or penalties in any court, on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provision * * * of this title * * (Emphasis supplied.) The defendant’s good faith in applying for the certificate of eviction has been established in previous administrative and judicial proceedings, and that issue cannot now be relitigated. There is nothing in the stipulated facts to suggest the defendant was motivated by bad faith in selling the property after demolition but prior to beginning new construction. “ Good faith or bad faith * * * is a state or condition of mind — a fact — which can be proved or judged only through evidence.” (Kavanaugh v. Kavanaugh Knitting Co., 226 N. Y. 185, 198.) In the absence of evidence of bad faith and in light of the terms of sale, the court concludes the defendant herein acted in good faith and is therefore insulated from liability under the code.
Under the circumstances, I find that no circumvention or evasion of the code resulted from the sale by the defendant to a purchaser which complied with all of the code requirements. 'The spirit and intent of the law was fully complied with.
Accordingly, the defendant is entitled to judgment dismissing the complaint.